**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| "NAZARBAYEV FUND" PRIVATE FUND,<br><br>                    Plaintiff,<br><br>      v.<br><br>JOURNALISM DEVELOPMENT NETWORK, INC.<br><br>                    Defendant. | Civil Action No. 22-cv-1880-JRR |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 4

LEGAL STANDARD ........................................................................................................ 7

ARGUMENT ..................................................................................................................... 7

   I.     The Fund Has Pled a Cognizable Claim for Defamation. ....................................... 7

      A.    The Fund Alleges the Defamatory Statements in the Story are False. ........................ 7

          1.    The Defamatory Statements Claiming Mr. Nazarbayev Controls the Fund Are False. .......................................................................................................... 8

          2.    The Complaint Alleges Provably False Statements of Fact, Not Opinions. ........... 11

          3.    The Defamatory Statements Claiming the Fund Conceals an Ex-Dictator's Assets with Secretive Foreign Structures Are False. ............................................. 13

      B.    The Statements Challenged in the Complaint Have a Defamatory Meaning. ............ 16

          1.    Statements Claiming That the Ex-Dictator of Kazakhstan Secretly Controls the Assets of an Educational Non-Profit are Defamatory ....................................... 17

          2.    The False and Defamatory Gist of the Story Is Not Opinion. ............................... 18

          3.    Defendant Cannot Inoculate Itself Against Defamation Liability by Claiming the Story Merely "Raises Questions." ....................................................................... 18

          4.    Statements Claiming that Mr. Nazarbayev Concealed His Personal Assets in the Fund Through "Secretive" Structures Are Defamatory. .......................................... 19

          5.    Defendant's Argument About the Fund's Spending Rates Are A Strawman. ......... 20

      C.    The Fund Has Met Its Burden to Plead Fault. ...................................................... 20

          1.    The Fund is Not a General-Purpose Public Figure. ............................................. 21

          2.    The Fund is Not a Limited-Purpose Public Figure. ............................................. 21

          3.    Even if the Fund is a Public Figure, It Has Alleged "Actual Malice." .................. 25

      D.    The Fund Has Alleged Defamation *Per Se* and Defamation Per *Quod*...................... 29

          1.    The Fund Has Alleged Defamation *Per Se*. ....................................................... 29

          2.    The Fund Has Alleged Defamation *Per Quod*.................................................... 31

   II.    Maryland's Anti-SLAPP Statute Does Not Apply to This Action................................. 32

      A.    The Fund Did Not File The Suit in Bad Faith ...................................................... 32

          1.    The Fund Plausibly Alleges Defamation. ........................................................... 33

2.      The Fund Seeks Appropriate Damages.................................................................... 33

3.      The Timing of the Suit Is Proper. ......................................................................... 34

B.      Defendant Does Not Show This Matter Is One of Public Concern............................. 35

C.      Defendant Fails to Show the Fund Subjectively Intended to Inhibit the Exercise of Protected Speech. ............................................................................................................. 35

CONCLUSION ...................................................................................................................... 35

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agora, Inc. v. Axxess, Inc.,*
   90 F. Supp. 2d 697 (D. Md. 2000) ................................................................ 12, 15

*Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co.,*
   138 S. Ct. 1865 (2018) ................................................................................... 10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ......................................................................................... 7

*Bentley v. Bunton,*
   94 S.W.3d 561 (Tex. 2002) ............................................................................ 31

*Chapin v. Knight-Ridder, Inc.,*
   993 F.2d 1087 (4th Cir. 1993) .................................................................. 24, 25

*Cheng v. Neumann,*
   51 F.4th 438 (1st Cir. 2022) ........................................................................... 15

*Chicago Reg'l Council of Carpenters v. Jursich,*
   986 N.E.2d 197 (Ill. App. 1 Dist. 2013) ........................................................ 34

*Chin-Teh Hsu v. New Mighty U.S. Tr.,*
   2020 WL 588322 (D.D.C. Feb. 6, 2020) ......................................................... 9

*Church of Scientology of Cal. v. Flynn,*
   744 F.2d 694 (9th Cir. 1984) ......................................................................... 19

*Compuware Corp. v. Moody's Invs. Servs., Inc.,*
   499 F.3d 520 (6th Cir. 2007) ......................................................................... 11

*Doe v. Johns Hopkins Health Sys. Corp.,*
   274 F. Supp. 3d 355 (D. Md. 2017) .......................................................... 16, 18

*Dougherty v. Harvey,*
   317 F. Supp. 3d 1287 (N.D. Ga. 2018) .......................................................... 18

*Dunn v. Air Line Pilots Ass'n,*
   193 F.3d 1185 (11th Cir. 1999) ..................................................................... 28

*Est. of Botvin v. Islamic Republic of Iran,*
   873 F. Supp. 2d 232 (D.D.C. 2012) ............................................................... 10

*Friedman v. Bloomberg L.P.,*
   884 F.3d 83 (2d Cir. 2017) ............................................................................ 29

*Gertz v. Robert Welch, Inc.,*
   418 U.S. 323 (1974) .................................................................................. 3, 25

*Goral v. Kulys,*
   21 N.E.3d 64 (Ill. App. 1 Dist. 2014) ............................................................ 34

*Harris v. City of Seattle,*
   152 F. App'x 565 (9th Cir. 2005) .................................................................. 26

*Harris v. Fix*,
No. 24-C-21-2000 (Md. Cir. Ct. Balt. City Mar. 30, 2022)...................................................... 33

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989).................................................................................... 27, 28, 29

*Harvey v. Cable News Network, Inc.*,
48 F.4th 257 (4th Cir. 2022) .................................................................................... 19

*Harvey v. Cable News Network, Inc.*,
520 F. Supp 3d 693 (D. Md. 2021) .................................................................... 14, 15

*Hatfill v. The New York Times Co.*,
532 F.3d 312 (4th Cir. 2008) .................................................................................... 21, 22

*Hutchinson v. Proxmire*,
443 U.S. 111 (1979)....................................................................................................... 22

*In re USGen New England, Inc.*,
2007 WL 2363353 (Bankr. D. Md. Aug. 16, 2007)..................................................... 10

*Indep. Newspapers, Inc. v. Brodie*,
966 A.2d 432 (Md. 2009) ........................................................................ 7, 20, 31

*James v. Pratt & Whitney*,
126 F. App'x 607 (4th Cir. 2005) .............................................................................. 32

*Knox v. Mayor & City Council Baltimore City*,
2017 WL 5903709 (D. Md. Nov. 30, 2017) ........................................................... 35

*Kolb v. ACRA Control, Ltd.*,
21 F. Supp. 3d 515 (D. Md. 2014) .............................................................................. 10

*L.J. v. Baltimore Curriculum Project*,
514 F. Supp. 3d 707 (D. Md. 2021)........................................................................... 14

*M & S Furniture Sales Co. v. Edward J. DeBartolo Corp.*,
241 A.2d 126 (Md. 1968) .......................................................................................... 30

*Masson v. New Yorker Magazine, Inc.*,
501 U.S. 496 (1991)..................................................................................................... 18

*Maurer v. Town of Independence*,
45 F. Supp. 3d 535 (E.D. La. 2014)............................................................................ 12

*MCB Woodberry Dev., LLC v. Council of Owners of Millrace Condo., Inc.*,
265 A.3d 1140 (Md. Ct. Spec. App. 2021) .................................................... 32, 33, 34

*McCafferty v. Newsweek Media Grp. Ltd.*,
2019 WL 1078355 (E.D. Pa. Mar. 7, 2019)............................................................... 19

*National Foundation for Cancer Research v. Council of Better Business Bureaus, Inc.*,
705 F.2d 98 (4th Cir. 1983) ....................................................................................... 23

*Nunes v. Lizza*,
12 F.4th 890 (8th Cir. 2021) ...................................................................................... 19

*Palin v. New York Times Co.*,
940 F.3d 804 (2d Cir. 2019)....................................................................................... 26

*Piscatelli v. Van Smith*,
    35 A.3d 1140 (2012) ................................................................................ 15
*S. Volkswagen, Inc. v. Centrix Fin., LLC*,
    357 F. Supp. 2d 837 (D. Md. 2005) .......................................................... 30
*S.E.C. v. Jackson*,
    908 F. Supp. 2d 834 (S.D. Tex. 2012) ...................................................... 28
*Samuels v. Tschechtelin*,
    763 A.2d 209 (Md. 2000) .......................................................................... 30
*Shapiro v. Massengill*,
    661 A.2d 202 (Md. Ct. Spec. Ap. 1995) ................................................... 30
*Sibley v. CarMax, Inc.*,
    2020 WL 4050294 (Md. Ct. Spec. App. July 20, 2020) ............................ 32
*Snead v. Redland Aggregates Ltd.*,
    998 F.2d 1325 (5th Cir. 1993) ............................................................ 22, 23
*Spirtos v. Yemenidjian*,
    499 P.3d 611 (Nev. 2021) ......................................................................... 31
*St. Amant v. Thompson*,
    390 U.S. 727 (1968)................................................................................... 25
*Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*,
    330 F.3d 1110 (9th Cir. 2003) .................................................................. 29
*T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*,
    385 F.3d 836 (4th Cir. 2004) ...................................................................... 7
*Time, Inc. v. Firestone*,
    424 U.S. 448 (1976)................................................................................... 23
*United States v. Real Prop. known as 2291 Ferndown Lane, Keswick VA 22947-9195*,
    2011 WL 2441254 (W.D. Va. June 14, 2011) ............................................ 9
*Waldbaum v. Fairchild Publications, Inc.*,
    627 F.2d 1287 (D.C. Cir. 1980) ................................................................ 23
*Wells v. Liddy*,
    186 F.3d 505 (4th Cir. 1999) .................................................................... 21
*Wilcox v. Superior Court*,
    33 Cal. Rptr. 2d 446 (Ct. App. 1994) ....................................................... 34
*World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co.*,
    783 F.3d 507 (4th Cir. 2015) ...................................................................... 9

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2444 (3rd ed. Apr.
    2022 update)............................................................................................... 10
W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 112 (5th ed. 1984).................. 31

**Rules**

Md. Code Ann., Cts. & Jud. Proc. § 5-807 .................................................................................. 32

Plaintiff "Nazarbayev Fund" Private Fund ("Plaintiff" or the "Fund") submits this memorandum in opposition to Defendant Journalist Development Network, Inc.'s Motion to Dismiss for Failure to State a Claim (together with its Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint, the "Motion").  ECF No. 19.  Pursuant to Local Rule 105.6, Plaintiff concurs in Defendant's request for a hearing on the Motion.

## <u>INTRODUCTION</u>

The Fund is a private, non-profit endowment that is bound by Kazakhstani law to use its resources to support Western-style education at Nazarbayev University ("NU") and Nazarbayev Intellectual Schools in Kazakhstan.  Defendant's publication, Organized Crime and Corruption Reporting Project ("OCCRP"), published a story on January 19, 2022 (the "Story") that accused the Fund of participating in a multi-billion-dollar corruption and money laundering scheme to help former Kazakhstan dictator Nursultan Nazarbayev hide and protect his looted wealth.

Prior to publication of the Story, the Fund explained to Defendant that Mr. Nazarbayev does not own or control the Fund or its assets.  The Fund told Defendant that the Fund's assets are safeguarded by a law titled, "On the Status of Nazarbayev University, the Intellectual Schools, and the Nazarbayev Foundation," which prevents the Fund from using its assets for any purpose other than supporting public education in Kazakhstan.  Compl. ¶¶ 45–46.  As a result, the Fund explained, "there are no circumstances under which [Mr. Nazarbayev] can remove funds from the organization." *Id.* ¶ 52.  Nevertheless, Defendant published the Story saying that Mr. Nazarbayev "hid" assets "in a network of foundations," including the Fund, "that answer only to him." *Id.* ¶ 69. Defendant omitted from its Story the law it knew prevents Mr. Nazarbayev from using Fund assets; instead, Defendant reported the opposite and claimed that Kazakhstani law gives Mr. Nazarbayev "ultimate control over [the Fund's] assets."  *See id.* ¶¶ 92–93.

Six months after the Story was published, it continued to cause serious harm to the Fund.

1

Defendant refused to correct or retract its false story. Left with little choice, the Fund sued.

Defendant's Motion attempts to rewrite its Story, mischaracterizes the Complaint, and fails as a matter of law.

First, the Fund has pled that the Defamatory Statements identified in the Complaint are false. These falsehoods include allegations that Kazakhstani law gives Mr. Nazarbayev control over the Fund and the ability to use its assets for his personal benefit. The Complaint alleges that Kazakhstani law in fact expressly bars what the Story claims it permits. Defendant now argues that a so-called "inviolability law"—immunizing Mr. Nazarbayev and his assets from prosecution for his acts while in office—somehow makes its reporting true. Defendant does not explain why this law would preempt the laws governing the Fund, or apply to actions after Nazarbayev left office, or permit transactions that Kazakhstani law prevents. Defendant never raised this law with the Fund prior to publication and did not identify its supposed impact in the Story. Any dispute over the meaning and application of Kazakhstani law is premature to resolve on a motion to dismiss. Other statements Defendant claims are true are likewise adequately alleged to be false.

Second, the Story's false statements are defamatory because they accuse an educational charity of being of being a vehicle through which an ex-dictator controls and conceals vast wealth looted from his country. Defendant argues, "[t]he fact that the Fund is subject to human control does not by itself suggest that the Fund engaged in any misconduct, nor does it subject to the Fund to 'scorn' or 'ridicule.'" Mot. 18. It is impossible to square this characterization with the Story. The Story's Subtitle highlights the discrepancy: "The former president — laying low since the country plunged into protest and violence in early January — hid banks, hotels, and a $100 million jet in a network of foundations that answer only to him." Compl. ¶ 69. Similarly, Defendant argues that it was not defamatory for it to report that the Fund did not publicly file financial statements.

What the Complaint challenges as defamatory, however, is the claim that the Fund conceals Mr. Nazarbayev's wealth through secretive foreign corporate structures, which is defamatory *per se*.

Third, the Fund has pled the required level of fault.  The Fund is a private figure, and Defendant does not dispute on this Motion that the Fund has pled negligence, which is all that is required.  Defendant argues the Fund is a public figure by conflating it with Mr. Nazarbayev—*i.e.*, precisely the falsehood giving rise to this lawsuit.  And Defendant offers conclusory assertions that the Fund voluntarily injected itself into a public debate without even attempting to substantiate this false claim.  Regardless, even if Plaintiff were a public figure, Plaintiff has pled that Defendant acted with actual malice.  The pre-publication email exchange shows that the Fund told Defendant that Kazakhstani law does not permit Mr. Nazarbayev to control or own the Fund or its assets, and Defendant knew that information it described as concealed was in fact publicly filed.  Also, Defendant plainly knew it was false to report that the Fund "did not respond to reporters' questions about what would prevent Nazarbayev from moving assets out of the Foundation for his own benefit, if he chose to do so." Compl. ¶ 86.  Defendant's pursuit of a preconceived narrative and its rush to publish rather than interview Fund representatives further demonstrates actual malice.

Fourth, Plaintiff has pled defamation *per se* because the allegation that a non-profit is fraudulently being used for personal purposes by an ex-dictator alleges fraud and corruption.  In any event, Plaintiff has pled that the Story damaged its reputation in the charitable investment community and harmed relationships with key personnel and financial institutions.

Finally, the Complaint does not violate Maryland's anti-SLAPP law, which has only been applied in egregious circumstances bearing no resemblance to this case.  The Fund believes in the importance of free speech and an open press, but "there is no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974).

## BACKGROUND

The Fund is a non-profit charitable foundation formed in 2009 under the laws of the Republic of Kazakhstan and headquartered in Nur-Sultan, Kazakhstan.[1]  Compl. ¶¶ 3, 8.  By law, its *sole purpose* is to support specific educational institutions that provide Western-style education in Kazakhstan.  *Id*. ¶¶ 1, 3.  The Fund's charter states that it was created "exclusively for the purposes of financing the activities of the autonomous organization of education 'Nazarbayev University', 'Nazarbayev Intellectual Schools', and its organizations." *Id*. ¶ 19.

Over the past decade, Nazarbayev University ("NU") has become one of the leading educational institutions in Central Asia.  *Id*. ¶¶ 21, 23.  The Fund acts as a private endowment fund for NU and for the network of Nazarbayev Intellectual Schools and their subsidiary organizations (together, "NIS").  *Id.* ¶¶ 21, 23, 46.  Endowments are an important part of the financial well-being of non-profits in the United States and abroad.

Defendant Journalism Development Network, Inc., which publishes OCCRP, is a media outlet that describes its mission as "expos[ing] crime and corruption so the public can hold power to account."  OCCRP, About Us, (August 24, 2007), https://www.occrp.org/en/about-us; *see also* Compl. ¶ 2.  On January 19, 2022, Defendant published an article titled "*The Nazarbayev Billions: How Kazakhstan's 'Leader of the Nation' Controls Vast Assets Through Charitable Foundations*" (the "Story").  Compl. ¶ 2.  The Story reported that Nursultan Nazarbayev, who served as the President of Kazakhstan from its independence from the former Soviet Union in 1991 until 2019,

---

[1] Nur-Sultan, which was named for former Kazakhstani president Nursultan Nazarbayev, was renamed "Astana" in September 2022, as part of an ongoing movement in Kazakhstan to remove Mr. Nazarbayev's name from countless institutions, businesses, and places.  *See* Associated Press, *Kazakhstan renames capital, extends presidential term* (Sept. 17, 2022), https://apnews.com/article/kazakhstan-constitutions-constitutional-amendments-astana-nursultan-nazarbayev-ab1b8355a7f8ce555b0aec6f8af503ee.

*id.* ¶¶ 13–18, used a web of purportedly charitable institutions, including the Fund, as a private slush fund for him and members of his family.  The Story links this allegation to multiple charitable foundations, including the Fund (which it incorrectly calls the Nazarbayev Foundation). The Story also identifies several other charitable foundations, such as the Nursultan Nazarbayev Foundation, which is unrelated to Plaintiff.  Mot., Ex. A at 5.  As to Plaintiff, the allegations are false.

Defendant made numerous false and defamatory statements in the Story, beginning with the headline (above) and a subtitle, which reads, "The former president — laying low since the country plunged into protest and violence in early January — hid banks, hotels, and a $100 million jet in a network of foundations that answer only to him."  *Id.* ¶ 69 (quoting Story).  The Story's Key Findings also contain false and defamatory statements:

- "Kazakhstan's state media has devoted frequent upbeat coverage to the good works performed by Nazarbayev's multiple charitable foundations.  But they have another function: Owning assets worth billions of dollars." *Id.* ¶ 78(a) (quoting Story).

- "The Nazarbayev assets under the control of charitable foundations include luxury hotels, banks, factories, warehouses, and other possessions amounting to at least $8 billion." *Id.* ¶ 78(b) (quoting Story).

- "Nazarbayev does not formally 'own' this fortune, but since he is the founder of these organizations, he does control it." *Id.* ¶ 78(c) (quoting Story).

- "Legal experts say that, in this arrangement, he has the ultimate say-so in what the foundations do — and this includes selling or giving away anything they own." *Id.* ¶ 78(d) (quoting Story).

- "Because the foundations do not publish annual reports, and some of their assets are hidden behind secretive foreign commercial structures, there is little transparency in where these billions are or where they might end up — especially since the country has plunged into turmoil." *Id.* ¶ 78(e) (quoting Story).

The Story also states that the Fund has "secretly acquired stakes in dozens of businesses" without explaining that such "secrets" were disclosed in U.K. *public filings*.  *Id.* ¶ 87 (quoting Story).  These false and defamatory statements are identified and defined in the Complaint as the "Defamatory Statements."  Compl. ¶ 85.

Defendant published the Defamatory Statements despite knowing that they were false.  On January 14, 2022, just five days before the publication of the Story, Defendant's reporter, Miranda Patrucic, wrote to the Fund requesting numerous documents and asking questions regarding the structure and purpose of the Fund.  *Id.* ¶ 45.  Aslan Sarinzhipov, who responded for the Fund, responded to Ms. Patrucic and answered her questions.  *Id.* ¶ 46.  In that first communication he conveyed the following information: (1) Mr. Nazarbayev does not own the fund; (2) the proceeds of the Fund are used to finance NU and NIS; and (3) the Fund is governed by a law of the Republic of Kazakhstan titled "On the Nazarbayev University, the Intellectual Schools, and the Nazarbayev Foundation."  *Id.*  Mr. Sarinzhipov explained that the law "On the Nazarbayev University, the Intellectual Schools, and the Nazarbayev Foundation" prohibited Mr. Nazarbayev from changing the charter "in any way he wants, or having the foundation move the assets out."  *Id.* ¶ 56.  He also explained that Mr. Nazarbayev "has no property rights to the Foundation's assets."  *Id.* ¶ 48(a).

A lengthy back and forth between Ms. Patrucic and Mr. Sarinzhipov ensued over the following days, *id.* ¶¶ 45–56, during which Mr. Sarinzhipov reiterated that Mr. Nazarbayev had no control over Fund assets.  He emailed Ms. Patrucic on January 18, 2022, "I can add that above all, the Foundation is a nonprofit organization . . . According to the Kazakh law on nonprofit organizations, in the event of liquidation, all remaining funds must be used to further the organization's original objective, namely, to finance NU and NIS.  ***Therefore, there are no circumstances under which the founder can remove funds from the organization***.  The law supersedes the charter, and the justice authorities would refuse to register any such changes."  *Id.* ¶ 52 (emphasis added).

In his January 18 email, Mr. Sarinzhipov offered to participate in an interview after he returned home from travelling and offered to make the president of NU available for an interview.

6

*Id.* ¶ 53.  Defendant rejected these opportunities to verify its reporting and rushed to publish the Story.  *Id. ¶¶* 64, 66.  Hours after publication of the Story, the Fund's legal counsel sent an email to Ms. Patrucic explaining that the Story was false and asked Defendant to issue corrections or retract the portion of the Story related to the Fund.  *Id.* ¶ 67.  Defendant refused.  *Id.* ¶ 68.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) must be denied where the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  In evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations and view the complaint in the light most favorable to the nonmoving party.  *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004).

## ARGUMENT

### I.      The Fund Has Pled a Cognizable Claim for Defamation.

Plaintiff has pled facts sufficient for a defamation claim.  Under Maryland law, a plaintiff must allege "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 441 (Md. 2009) (citation omitted).  As explained below, Plaintiff has satisfied each element.

#### A.      The Fund Alleges the Defamatory Statements in the Story are False.

The Complaint defines specific statements in the Story as the "Defamatory Statements" that are challenged in the lawsuit.  Compl. ¶¶ 69–70, 78, 86–88.  In the Motion, Defendant groups these Defamatory Statements into two categories: (1) statements concerning Mr. Nazarbayev's

purported control over and ownership of the Fund's assets; and (2) statements concerning the Fund's alleged concealment of assets for Mr. Nazarbayev. Mot. at 14–18. The Fund pleads sufficient facts under Rule 8 to plausibly allege that the Defamatory Statements are false. Defendant's arguments to the contrary mischaracterize the Story and the Complaint, misstate the law, and seek improperly to raise disputed issues of fact on a motion to dismiss.

### 1.   The Defamatory Statements Claiming Mr. Nazarbayev Controls the Fund Are False.

#### a.   Under Kazakhstani Law, Nazarbayev Does Not Control the Fund.

As set forth in the Complaint, the Story falsely states that Mr. Nazarbayev controls Plaintiff for his own benefit. Defendant concedes in its Motion that the Story's "actual claim is that Mr. Nazarbayev has ultimate authority to control the Fund for his own benefit." Mot. at 15. This allegation is false because Kazakhstani law does not give Mr. Nazarbayev ultimate authority to control the Fund for his own benefit. *See* Compl. ¶¶ 4–5, 25–41, 81–83, 89. Kazakhstani law compels the Fund to use its resources solely to support NU and NIS. *Id.* ¶ 89.

Defendant contends Plaintiff failed to plead falsity because the Complaint acknowledges the existence of a Kazakhstani law that Defendant calls the "inviolability law." *See, e.g.*, Mot. at 7–8. As described in the Story, this law provides, "The First President of the Republic of Kazakhstan - Elbasy possesses immunity. He cannot be held responsible for actions taken during [his] period of office … and after their termination, [those committed] in connection with the exercise of his status of the First President ... He cannot be subject to detention, arrest and custody, interrogation, or personal search." Mot., Ex. A at 5 (alterations by Defendant). Defendant's Story also claims that "[t]he inviolability also extends to property belonging to the 'Foundation of the First President of the Republic of Kazakhstan - Elbasy' and other legal entities established by him." In its Motion, Defendant argues—contrary to fact and the allegations in the Complaint—that the

"inviolability law" meant that the Fund was not constrained by any Kazakhstani law.  Defendant wrongly states that Plaintiff "does not dispute that, at the time of publication, Mr. Nazarbayev and any entity he established were immune from Kazakhstani law."  Mot. at 15.

In fact, "immunity from prosecution" is not the same as immunity from all law, and Plaintiff never agreed that the Fund or associated persons are unconstrained by Kazakhstani law. To the contrary, the Complaint pleads that Kazakhstani law protects the Fund's assets from mismanagement, permits courts to invalidate improper transactions, and allows the Fund to seek reimbursement for transactions that violate the Fund's statutory and chartered purpose of supporting education.  Compl. ¶¶ 36-41.  Defendant does not explain why the inviolability statute would preempt statutes expressly governing and safeguarding the assets of the Fund.  Nor does Defendant explain why a law immunizing a *former* dictator for his actions while in office would permit him to ignore laws safeguarding the Fund after leaving office, when the Story was published.

Defendant's dispute about foreign law is improper to resolve on the present motion. Determinations of foreign law are typically postponed until after the motion to dismiss stage.  *See, e.g., Chin-Teh Hsu v. New Mighty U.S. Tr.*, 2020 WL 588322, at *6 (D.D.C. Feb. 6, 2020) (declining to rule on Taiwanese law in resolving motion to dismiss); *United States v. Real Prop. known as 2291 Ferndown Lane, Keswick VA 22947-9195*, 2011 WL 2441254, at *4 (W.D. Va. June 14, 2011) (delaying determination of substantive criminal law because the court did not have "the benefit of considering full briefing, evidence, and argument").  It is frequently necessary to present expert testimony regarding foreign law to aid the court in determining the content of foreign law.  *See, e.g., World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co.*, 783 F.3d 507, 518 (4th Cir. 2015) (declarations regarding Greek law used to resolve motion for summary judgment); *Kolb v. ACRA Control, Ltd.*, 21 F. Supp. 3d 515, 528 (D. Md. 2014), *aff'd*, 632 F.

App'x 87 (4th Cir. 2015) (defendants did not waive their right to offer testimony regarding Irish law). "Statutes, administrative material, and judicial decisions can be established most easily by introducing a copy of the applicable provisions or court reports supported by expert testimony about their meaning." 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2444 (3rd ed. Apr. 2022 update). Federal courts may "sometimes [be] provided with the views of the relevant foreign government." *Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865, 1873 (2018).

Defendant has provided no evidence in support of its reading of Kazakhstani law. Defendant never even refers to the text of the law in its brief. Defendant's brief only includes Defendant's unsupported and conclusory assertion that the "inviolability law" erases all constraints on the Fund. *See* Mot. at 15 ("Kazakhstani law (whatever it may) does not operate to confine Mr. Nazarbayev's activities."); *id.* ("inviolability law permits" Mr. Nazarbayev to transfer funds to himself). Even if it was proper to decide this disputed issue on a motion to dismiss (and it is not), Defendant's inaccurate paraphrasing of foreign law falls far short of sufficient proof that Kazakhstan's laws protecting the Fund are illusory.

### b.  Application of Kazakhstani Law to the Fund Is the Jury's Role.

In addition to Defendant's failure to present any basis to disturb the content of Kazakhstani law as pled, the application of that law to the facts of this case cannot be resolved on a motion to dismiss where Plaintiff's allegations must be taken as true. The determination of the facts here must be made by a jury, with the benefit of expert testimony on Kazakhstani law. *See Est. of Botvin v. Islamic Republic of Iran*, 873 F. Supp. 2d 232, 240 (D.D.C. 2012) (expert testimony regarding foreign law "aid[s] the court in determining the content of the law, not in applying that law to the facts of the case"); *In re USGen New England, Inc.*, 2007 WL 2363353, at *20 (Bankr. D. Md. Aug. 16, 2007) (allowing expert testimony regarding foreign law). The need to reserve

10

such determinations for the jury is particularly acute in this action because the Fund's claims are governed by U.S. law—the Fund is not asking the Court to apply Kazakhstani law to decide legal issues in this case.  Kazakhstani law is relevant solely as a *fact* that Defendant falsely reported as it pertains to the Fund.  Such facts should be decided by the jury.

### 2.      The Complaint Alleges Provably False Statements of Fact, Not Opinions.

Defendant argues that the Defamatory Statements in the Story challenged in this lawsuit are not false because they consist of non-actionable predictive opinions about the future.  Mot. at 16.  The Defamatory Statements are not, however, predictions of the future; they are false statements of present fact.  For example, the Complaint identifies the Subtitle of the Story as a Defamatory Statement, which says Mr. Nazarbayev hid assets in a network of foundations (including the Fund) "that *answer* only to him."  Compl. ¶ 75 (quoting Story; emphasis added).  The Story's Key Findings state that "since [Nazarbayev] is the founder of these organizations, he does *control* it [this fortune]" and "he *has* the ultimate say-so in what the foundations do."  *Id.* ¶ 78(c)-(d) (quoting Story; emphases added).  Each of these present-tense statements describe Mr. Nazarbayev's supposed control over the Fund as present fact, not a prediction.  It was likewise not a prediction when Defendant falsely claimed that that the Fund "did not respond to reporters' questions about what would prevent Nazarbayev from moving assets out of the Foundation for his own benefit, if he chose to do so."  Compl. ¶ 86.

The cases on which Defendant relies are inapposite.  Defendant cites to *Compuware Corp. v. Moody's Invs. Servs., Inc.*, Mot. at 16, but there the defamation claim failed because a "credit rating is a predictive opinion, dependent on a subjective and discretionary weighing of complex factors" and any inferences "could not be proven false because of the inherently subjective nature of Moody's ratings calculation."  499 F.3d 520, 529 (6th Cir. 2007).  In contrast, there is nothing

subjective about the false claim that the Fund's assets are owned and controlled by a former dictator. Similarly, Defendant cites to *Maurer v. Town of Independence,* Mot. at 16, but that case concerns a "statement to the IVFD Board members that Ragusa would pull funding from IVFD and dissolve the corporation if plaintiff remained fire chief," which the court concluded was a prediction of the future because it is not capable of verification. 45 F. Supp. 3d 535, 552 (E.D. La. 2014). In contrast, the Defamatory Statements claimed that a former dictator, at the time the Story was published, controlled and could use for his benefit the assets of the Fund.

Defendant claims that "[p]roperly understood, the Article merely *opines* that Mr. Nazarbayev has the power to exert control over the Fund given his undisputed powers and immunities." Mot. at 16. In claiming that the Story merely offered opinions, Defendant relies on a case stating that an opinion cannot be actionable unless it "asserts a provably false fact or factual connotation," or "impl[ies] the assertion of undisclosed, false facts." Mot. at 16 (citing *Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697, 702 (D. Md. 2000), *aff'd*, 11 F. App'x 99 (4th Cir. 2001)). But the Story does assert provably false facts when it indicates that nothing "would prevent Nazarbayev from moving assets out of the Foundation for his own benefit, if he chose to do so," and falsely claims that the Fund's representative could point to no obstacles to such actions when asked. *Id.* at 16 (quoting Compl. ¶ 89). The Complaint pleads facts showing the Fund directed Defendant's reporter to laws preventing Mr. Nazarbayev from moving assets out of the Fund for his own benefit. Compl. ¶ 52. Thus, not only are these supposed "opinions" provably false, the Complaint pleads evidence proving they *are* false. *See, e.g.*, *id.* ¶ 75 (False: the Fund answers only to Mr. Nazarbayev); *id.*, ¶ 78(c) (False: Nazarbayev controls the Fund's assets); and *id.* ¶ 78(d) (False: Nazarbayev has the ultimate "say-so" over the Fund).

12

3.   **The Defamatory Statements Claiming the Fund Conceals an Ex-Dictator's Assets with Secretive Foreign Structures Are False.**

The Complaint alleges that the Story was false with respect to claims that the Fund conceals Mr. Nazarbayev's assets under the guise of a charity with a secretive structure.  In arguing that such statements are not false, Defendant mischaracterizes the Complaint as taking issue only with reporting that the Fund does not publicly file its annual financial statements—ignoring the allegations in the Story (and challenged in the Complaint) that the Fund is a tool for concealing Mr. Nazarbayev's assets and that the Fund uses secretive structures to further hide assets. Defendant argues that the statements about annual financial statements are true because the Fund does not publicly file financial statements.  Defendant also argues that it is accurate to call public transactions "secret" because public filings required investigative "sleuthing" to find.  Mot. at 18. Each argument is incorrect as a matter of law.

Contrary to Defendant's argument, this case is not about whether the Fund publicly discloses its annual financial statements; the Story falsely accuses the Fund of *concealing* Mr. Nazarbayev's personal assets.  At the most basic level, the allegation that Mr. Nazarbayev hides his personal assets in an educational charity is an accusation of concealment and fraud.  The Complaint also challenges Defendant's statements in the Key Findings section of the Story that claim, "[b]ecause the foundations do not publish annual reports, and some of their assets are hidden behind secretive foreign commercial structures, there is little transparency in where these billions are or where they might end up — especially since the country has plunged into turmoil." Compl. ¶ 78(e) (quoting Story); *see also id.* ¶ 69 ("The former president—laying low since the country plunged into protest and violence in early January—hid banks, hotels, and a $100 million jet in a network of foundations that answer only to him" (quoting Story)); *id.* ¶ 87 ("The Story states that Plaintiff has 'secretly acquired stakes in dozens of businesses.'").  Read in the context of the Story,

as the law requires, these statements and other similar statements falsely state that the Fund is an instrument in an ex-dictator's plan to conceal billions of dollars of assets looted from his country. This is provably false: the Fund's assets are not Mr. Nazarbayev's personal assets and the Fund's structure does not "hide" assets by employing ordinary corporate structures subject to, and in compliance with, corporate disclosure laws.  *Id.* ¶¶ 33, 35, 48, 88.

Most private organizations and businesses do not disclose their financials, yet they are not accused by the Organized Crime and Corruption Reporting Project of holding assets "hidden behind secretive foreign commercial structures."  It is not reasonable to read the Story as simply noting that the Fund does not publicly disclose its financials; the Story contains a clear factual allegation that the Fund has *concealed* its assets.  To the extent this is a contested fact, it is not suited for resolution on a motion to dismiss.  *See L.J. v. Baltimore Curriculum Project*, 514 F. Supp. 3d 707, 718–19 (D. Md. 2021) ("Any contention about whether [the] statements were genuinely false . . . are points of factual dispute better addressed as the litigation proceeds.").

Next, Defendant argues, "that a reader might reasonably *draw the inference* of corruption or fraud is of no moment," arguing that the facts on which such an inference is based is true.  Mot. at 17.  As discussed above, this argument ignores the expressly false factual allegations in the Story creating the "inference of corruption or fraud."  On its face, it makes little sense that readers would draw an inference of corruption or fraud from the mere fact that an organization does not have public financials—there are clearly other facts giving rise to that inference.  Furthermore, while these falsehoods are express, not implied, they would be actionable even if they were only implied because the statements imply false facts and not merely defamatory truths.

The cases on which Defendant relies are inapposite and incorrectly described in the Motion. Defendant cites *Harvey v. Cable News Network, Inc.,* 520 F. Supp 3d 693, 715 (D. Md. 2021), for

14

the proposition that if "[the] reported facts on which [an] inference is based…are still undisputedly true," the statements are "therefore not defamatory".  Mot. at 17.  Unlike in *Harvey*, Plaintiff has pled that the individual statements in the Story are literally false because its structures are no more secretive than most businesses, as Defendant acknowledges.  *See* Mot. at 20 (observing that "[m]any state laws protect corporations from certain disclosures," citing Delaware law, and concluding "there is nothing inherently disdainful about non-disclosure").  In addition, the *Harvey* Court concluded that the implication alleged there was not warranted because, unlike here, the plaintiff patched together phrases from several different paragraphs in a manner the court held was not a fair reading of the publication at issue.  *Harvey*, 520 F. Supp. 3d at 715.[2]

Defendant also argues that, even if the transactions are public, it is still truthful to call them "secret" because they required investigative sleuthing for Defendant to uncover and therefore are "not *reasonably* accessible."  Mot. at 18 (emphasis in original).  But it is simply false to say that public filings are secret.  *See Black's Law Dictionary* 639 (3rd Pocket Ed. 2006) ("Secret": "1. Something that is kept from the knowledge of others or shared only with those concerned. . . . 2. Information that cannot be disclosed without a breach of trust . . . ").  Investigative sleuthing is not required to check public filings; any argument to the contrary at a minimum raises a fact question.[3]

Finally, Plaintiff alleges that the statement a company acquired a stake in a Fund-affiliated

---

[2] Defendant wrongly relies on *Cheng v. Neumann*, 51 F.4th 438 (1st Cir. 2022).  Mot. at 17.  In *Cheng*, the First Circuit concluded that the argued-for inference was implausible in the context of the publication when read as a whole.  51 F.4th at 445.  But here "inference[s] of corruption or fraud," Mot. at 17, are consistent with the claims throughout the Story and conceded by Defendant.

[3] To the extent that Defendant cites *Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697 (D. Md. 2000) to suggest a "claim of secrecy" is a protected opinion, Mot. at 18, *Agora* simply states the standard an actionable opinion, *Agora*, 90 F. Supp. 2d at 702.  Because an ordinary person is "likely to understand" a statement about secrecy as a "declaration of an existing fact," it is not a non-actionable opinion.  *Piscatelli v. Van Smith*, 35 A.3d 1140, 1152 (2012); *see supra* Section I.A.2.

entity "worth over $200 million [where] it paid just $20 million" was false.  Compl. ¶ 88 (quoting

Story).  Defendant argues that this statement is neither false nor defamatory because it was simply

"reporting assets by a certain valuation system . . . does not make a fact false."  Mot. at 29.  The

only fair reading of the Story is that it claims the purchaser received an extraordinary deal, paying

"*just* $20 million" for an asset with a much greater value.  Compl. ¶ 88.  (emphasis added).  This

is not "like reporting by meters rather than by feet," as Defendant argues. Mot. at 29.  Rather, the

only reading of this statement is that assets were sold below fair value.  This is false.[4]

### B.      The Statements Challenged in the Complaint Have a Defamatory Meaning.

The Defamatory Statements challenged in this lawsuit are defamatory because they accuse

the Fund, a charitable educational endowment, of being a vehicle through which an ex-dictator

controls and conceals vast wealth looted from his country.  Under Maryland law, "a defamatory

statement is one 'which tends to expose a person to public scorn, hatred, contempt or ridicule,

thereby discouraging others in the community from having a good opinion of, or associating with,

that person.'" *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 365 (D. Md. 2017)

(citation omitted).  The Defamatory Statements plainly expose the Fund to scorn and contempt.

Defendant's reading of the Story is irreconcilable with the article itself.  Defendant claims

that the Story merely states that "the Fund is subject to human control," Mot. at 18–19, and "does

not publish annual reports," Mot. at 20.  If that were all the Story said, the Fund would not have

sued Defendant—and likely, no one would read the Story.  But of course, that is not a fair

description of an article titled, "The Nazarbayev Billions: How Kazakhstan's 'Leader of the Nation'

Controls Vast Assets Through Charitable Foundations," published by the Organized Crime and

---

[4] The statement that assets were sold for very low value also is defamatory because it indicates that Plaintiff is not stewarding its assets for the support of NU and NIS as it is bound to do.

Corruption Reporting Project.  Compl. ¶ 69.  The Story's subtitle reads, "The former president —

laying low since the country plunged into protest and violence in early January — hid banks, hotels,

and a $100 million jet in a network of foundations that answer only to him."  *Id.*  (quoting Story).

Such language clearly exposed the Fund to scorn.

Defendant's other defamatory meaning arguments also fail.  Defendant hides behind the

age-old excuse—routinely rejected by courts—that the Story merely "raise[s] questions."  Mot. at

20.  Defendant also raises a strawman argument by debating the defamatory meaning of statements

not challenged in the Complaint.

### 1.    Statements Claiming That the Ex-Dictator of Kazakhstan Secretly Controls the Assets of an Educational Non-Profit are Defamatory.

Defendant contends that Plaintiff's objection to the Story is grounded in allegations that

Mr. Nazarbayev—"a human"—controls the Fund.  But that misreads the allegations in the

Complaint.  The problem with the Story, of course, is not that it says "a human" controls the Fund,

but that it says the particular human controlling it is a deposed ex-dictator who can use the Fund

as his personal piggybank.  The Story claims that Nazarbayev has "ultimate control over [Fund]

assets."  Compl. ¶ 92 (quoting Story).  The Story also claims that Mr. Nazarbayev "hid banks,

hotels, and a $100 million jet in a network of foundations that answer only to him."  *Id.*  ¶ 69

(quoting Story).  It also states that "since he is the founder of these organizations [including the

Fund], he does control it," *id.*  ¶ 78(c) (quoting Story), and "he has the ultimate say-so in what the

foundations do — and this includes selling or giving away anything they own."  *Id.*  ¶ 78(d)

(quoting Story).  The Story's contention that assets can be diverted away from the Fund to enrich

Nazarbayev is plainly defamatory.

Further, Defendant's own Motion demonstrates why the allegations of control by Mr.

Nazarbayev are defamatory.  According to Defendant, the Story references Mr. Nazarbayev's

17

"authoritarian rule over Kazakhstan from 1990 to 2019," the regime's "suppression of speech and political opposition" and describes a culture of "cronyism that allowed him and his allies to amass wealth and influence." Mot. at 3. In Defendant's own words, "Mr. Nazarbayev . . . exercised vast, dictatorial powers." Mot. at 23. Given this context, it is defamatory to claim the Fund is a vehicle through which Mr. Nazarbayev controls billions of dollars amassed through cronyism. At the very least, such statements "discourag[e] others . . . from having a good opinion of[] or associating with" the Fund and are therefore defamatory. *Johns Hopkins Health Sys.*, 274 F. Supp. 3d at 365.

### 2.      The False and Defamatory Gist of the Story Is Not Opinion.

In its defamatory meaning discussion, Defendant takes a detour back to falsity to argue the defamatory gist alleged in the Complaint is protected opinion. Mot. at 19. To do so, Defendant selectively quotes the Complaint as alleging the gist of the Story was that the Fund is a "legal fiction." *Id.* In fact, the quoted sentence continues, and alleges in full, "In its entirety, the Story conveys the false and defamatory gist that Plaintiff is a legal fiction through which Mr. Nazarbayev absolutely controls billions of dollars in wealth that is supposed to be earmarked for funding education." Compl. ¶ 70. As discussed above, *see supra* Section I.A.2, this is a provably false statement of fact. *Cf. Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (a plaintiff is required to prove false "the substance, the gist, the sting of the libelous charge").

### 3.      Defendant Cannot Inoculate Itself Against Defamation Liability by Claiming the Story Merely "Raises Questions."

Defendant claims that the Story is not defamatory because it was only intended to "raise questions." Mot. at 20; Mot., Ex. A at 9. Courts see through the framing of defamatory statements as "questions" or "criticism." *See Dougherty v. Harvey*, 317 F. Supp. 3d 1287, 1289–92 (N.D. Ga. 2018) (holding that statement that plaintiff "may or may not be HIV positive, I don't know" was defamatory because "[t]o ignore the obvious feature of [the] statement would be to improperly

18

elevate form over substance" and "[t]he plain import of the words spoken charge [the plaintiff] with having HIV"); *Nunes v. Lizza,* 12 F.4th 890, 897 (8th Cir. 2021) ("When a reader, 'connecting the dots,' could reasonably arrive at the implication, the author may be accountable."); *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984) ("[T]he 'arrangement and phrasing of apparently nonlibelous statements' cannot hide the existence of a defamatory meaning.").

### 4.   Statements Claiming that Mr. Nazarbayev Concealed His Personal Assets in the Fund Through "Secretive" Structures Are Defamatory.

As explained above, *see supra* Section I.A.3, Defendant mischaracterizes the Complaint as contesting only reporting that the Fund does not publicly file financial statements, ignoring the Story's claim that the Fund conceals Mr. Nazarbayev's assets through secretive foreign structures. Plaintiff's actual claim is clearly defamatory.

Defendant is also wrong that allegations of concealment or secrecy cannot be defamatory as a matter of law.  Courts have held that when such allegations falsely imply misconduct, those statements can be actionable.  In *Nunes,* the Eighth Circuit held that allegations of secrecy can be the basis for an actionable defamation claim.  12 F.4th at 897. The Eighth Circuit explained, "[T]he article's principal theme is that Nunes and his family hid the farm's move to Iowa—the 'politically explosive' secret. . . . A reasonable reader could conclude, from reading the article as a whole, that the identified 'secret' is 'politically explosive' because Nunes knew about his family's employment of undocumented labor." *Id.*  Here, Defendant *agrees* that "a reader might reasonably draw the inference of corruption or fraud" from the Story's allegations concerning secrecy and concealment.  Mot. at 17 (emphasis omitted).[5]  That is enough to plead defamatory meaning.

---

[5] Defendant's cases are distinguishable.  In *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 263 (4th Cir. 2022), the defamatory statements, were substantially true, unlike in this case.  The court in *McCafferty v. Newsweek Media Grp. Ltd.,* 2019 WL 1078355 (E.D. Pa. Mar. 7, 2019)

### 5.     Defendant's Argument About the Fund's Spending Rates Are A Strawman.

Defendant argues that Plaintiff's "real gripe" is the Story's reporting that the Fund spends less than five percent of its assets on education.  Mot. at 11 ("The Fund's only real gripe, then, is that indisputably *true* facts have "sting" when they are accurately reported—for example, that the Fund spent less than 5% of its $1 billion on education."); *see also id.* at 4 (the Fund "earned $200 million in investment income, while paying a total of $46.5 million in subsidies"); *id.* at 19 (the Fund received "over $1 billion from undisclosed donors and spent only $46.5 million on education"). The Complaint, however, does not even mention reporting on the Fund's spending—endowments are not supposed to spend a large portion of their funds.[6]  The Court should disregard Defendant's attempt to dismiss a claim of its own invention.

### C.     The Fund Has Met Its Burden to Plead Fault.

The Complaint pleads facts showing "the defendant was legally at fault in making the statement[s]" that are challenged in the Fund's defamation claim.  *See Indep. Newspapers, Inc.*, 966 A.2d at 441.  As a private figure, the Fund was required only to allege that Defendant acted negligently in publishing false statements.  Defendant does not dispute in its Motion that the Fund has met its pleading burden under a negligence standard.  Defendant argues, however, that Plaintiff is both a "general-purpose" and a "limited-purpose" public figure and therefore must meet the heightened standard of pleading "actual malice."  Defendant is mistaken: Plaintiff is not a general-purpose or limited-purpose public figure, and therefore the "actual malice" standard does not apply

---

found the statements at issue were not defamatory because under Pennsylvania law statements about political affiliations are not actionable.  *Id.* at *4

[6] *See, e.g.*, Emily Aronson, *Understanding Princeton's endowment: Long term is the mantra*, https://www.princeton.edu/news/2021/10/04/understanding-princetons-endowment-long-term-mantra (October 4, 2021) (Princeton's endowment aims to spend more than 5% of its funds).

here.  However, even if actual malice applied, the Complaint would meet this heightened standard.

### 1.    The Fund is Not a General-Purpose Public Figure.

To be a general-purpose public figure, an entity must have "such pervasive fame or notoriety that they become public figures for all purposes and in all context[s]." *Wells v. Liddy*, 186 F.3d 505, 532 (4th Cir. 1999) (citation omitted).  The Fund is not remotely close to being a general-purpose public figure.  The Fund is a little-known endowment based in Kazakhstan.  Aside from the Story and its republication, the Fund had virtually no online presence when the Story was published.  Plaintiff is not prominent in Kazakhstani media or society.  Indeed, the fact that the Story was still the first Google search result for Plaintiff's name over six months after its publication, Compl. ¶ 7, reinforces that the Fund does not possess "pervasive fame or notoriety."

Defendant's attempts to characterize the Fund as a general-purpose public figure because it shares a name with Kazakhstan's former president asserts the same falsehoods that gave rise to this suit.  Mr. Nazarbayev is uninvolved with the Fund's operations and does not own or control it.  His fame is not Plaintiff's fame.  The article about *Mr. Nazarbayev* on which Defendant relies for the claim that the *Fund* is a public figure does not even name the Fund and only includes a single general reference to "well-endowed foundations," Mot., Ex. E at 1, of which Defendant knows there are many in Kazakhstan, *see* Mot., Ex. A at 2 (describing four charitable foundations).

### 2.    The Fund is Not a Limited-Purpose Public Figure.

Plaintiff is not a limited-purpose public figure because it does not satisfy any of the five prongs of the Fourth Circuit's test in *Hatfill v. The New York Times Co.*, 532 F.3d 312 (4th Cir. 2008). To determine if the Fund is a "limited-purpose" public figure, the Court must assess whether "(1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in the public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication

of the defamatory statement; and (5) the plaintiff retained public-figure status at the time of the alleged defamation." *Id.* at 319.  The second and third factors are the "heart" of the test.  *Id.* at 322.

First, Plaintiff did not have access to channels of effective communication.  "Some corporations, such as media corporations or large conglomerates, obviously have such access, but the bulk of corporations do not."  *Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1329 (5th Cir. 1993).  Plaintiff is not a media corporation or large conglomerate and could not rebut Defendant via such channels.  In *Hutchinson v. Proxmire*, the Supreme Court held that a defamed behavioral scientist with access to certain communications in his field of study was not a limited-purpose public figure, in part, because his access to communication channels was extremely limited.  443 U.S. 111, 136 (1979).  Similarly, even if Plaintiff had limited access to communication channels in Kazakhstan, its access internationally is extremely limited.  Defendant does not cite any examples of the Fund accessing public media or communications.

Defendant argues Plaintiff is an entity "wielding [Mr. Nazarbayev's] power and influence" as a reason why Plaintiff "undoubtedly has always had access to 'effective communication.'" Mot. at 23.  This argument contradicts Plaintiff's allegations that Mr. Nazarbayev is "not actively involved in Plaintiff's operations," has "no property rights to the Foundation's assets," and does "not have control over" Plaintiff.  Compl. ¶¶ 33, 48(a), 50.  In short, Plaintiff does not wield Mr. Nazarbayev's power and influence.  Defendant's attempt to argue otherwise just repeats the defamatory narrative Plaintiff disputes.  It certainly is not an issue appropriate for resolution on a motion to dismiss where all factual allegations in the Complaint are assumed true.

Second, there was no public controversy over "education funding" in Kazakhstan when the Story was published, *see* Mot. at 22, and if there was a public controversy, Plaintiff did not voluntarily assume a role of special prominence in it.  The Supreme Court has refused "to equate

'public controversy' with all controversies of interest to the public." *Time, Inc. v. Firestone*, 424 U.S. 448, 454 (1976). "A public controversy . . . must be a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way." *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980) (citation and footnote omitted). Here, there is no "real dispute" regarding education spending in Kazakhstan beyond Defendant's own defamatory publications. Defendant defines the supposed controversy as "a broader national 'dispute' over Kazakhstan's public education, cronyism, and the use of government money." Mot. at 24. But beyond its own defamatory stories, Defendant has not shown any public controversy over education funding as to which the Defamatory Statements in the Story relate.[7]

Even if there were a public controversy, Plaintiff did not voluntarily assume a role in the public controversy, let alone a role of special prominence. Indeed, "[a]lthough some corporations voluntarily thrust themselves into the public eye, the majority of corporations do not." *Snead*, 998 F.2d at 1329. In *Snead*, the Fifth Circuit considered a corporate plaintiff's notoriety, the nature of its business, and the intensity of media attention it receives in determining if it is a public figure. *Id*. As in *Snead*, the Fund, notwithstanding its assets, has a low profile, does not operate high profile businesses, and receives little media attention; therefore, it is not a public figure. Defendant cites the Complaint as conceding that the Fund has been "intentionally cultivating a 'reputation in the international investment and charitable community,'" Mot. at 24 (quoting Compl. ¶ 96), but Defendant invented the key words, "intentionally cultivating"—the Complaint says nothing of the sort. Every business and person has a reputation; that does not make them public figures.

Defendant cites *National Foundation for Cancer Research v. Council of Better Business*

_____

[7] The *New York Times* story cited by Defendant, Mot. at 22—the only piece of evidence not generated by Defendant itself—is about neither the Fund nor education spending.

23

*Bureaus, Inc.,* 705 F.2d 98 (4th Cir. 1983), to support the proposition that Plaintiff "voluntarily chose a course of conduct that invited public attention." Mot. at 24. In that case, the plaintiff undisputedly sought to become a household name and received notoriety largely due to its solicitation of funds and public trumpeting of their use. Here, Plaintiff has done nothing similar. It is not a household name and has not attempted to be one. Moreover, Defendant does not even attempt to explain how Plaintiff assumed a role of special prominence; it merely makes a conclusory statement that Plaintiff did so. Mot. at 24. Defendant never identifies any instance in which the Fund has injected itself into any public debate.

Third, Plaintiff did not seek to influence the resolution or outcome of any controversy. Defendant speculates that because there were political protests in Kazakhstan and Plaintiff has (1) raised money for the ultimate benefit of institutions in Kazakhstan and (2) has cultivated a good reputation among private business internationally, Plaintiff has sought to influence the resolution of political discord in Kazakhstan. *Id.* But Defendant has not connected the dots to show that the Fund has actually sought to have any influence over political discord in Kazakhstan, and such political discord would not in any event be the public debate over "education funding" into which Defendant contends the Fund injected itself. *See* Mot. at 22.

Finally, to the extent there is a public controversy relating to the Story, the controversy did not exist prior to the publication of the defamatory statement, and Plaintiff was not a public figure before the Story was published (if ever). Before the Story was published, Plaintiff had virtually no online presence. Plaintiff has never maintained a social media presence, nor does it have a website, a public relations department, or host public events. Plaintiff does not issue commentary on political or otherwise newsworthy matters in Kazakhstan or elsewhere. Defendant wrongly relies on *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993), for the proposition that

24

conducting "'nationwide charitable activities' over a 'long … duration" suffices for public figure status.'" Mot. at 25.  *Chapin* is inapposite because the plaintiff in that case conducted nationwide charitable activities like public solicitation. 993 F.2d at 1092 n.4 (citing precedent regarding a charity's "massive solicitation efforts").  The Fund has no similar public solicitation programs.

### 3.   Even if the Fund is a Public Figure, It Has Alleged "Actual Malice."

Plaintiff has in any event alleged actual malice because it made Defendant aware the Story was false before publication.  The "actual malice" standard requires Plaintiff to show Defendant published the Story with "knowledge that it was false or with reckless disregard of whether it was false or not." *Gertz*, 418 U.S. at 328.  As shown by the pre-publication email exchange, Defendant understood its statements were false.  Compl. ¶¶ 45–65.

In the pre-publication correspondence pleaded in the Complaint, Plaintiff provided Defendant's reporter with specific facts, including Kazakhstani law and its charter, that demonstrated that Mr. Nazarbayev does not control or own the Fund or its assets. *Id.* ¶ 46 (Fund's "activity is governed by the Republic of Kazakhstan Law 'On the Status of Nazarbayev University, the Intellectual Schools, and the Nazarbayev Foundation'"); *id.* ¶ 48(a) ("According to the Foundation's charter, its founder (the First President of Kazakhstan, or Elbasy) has no property rights to the Foundation's assets (is not its owner)"); *id.* ¶ 52 ("there are no circumstances under which the founder can remove funds from the organization").  The Fund flagged safeguards in the law that prevent a change in the Fund's charter to permit misuse of its assets, explaining, the "law supersedes the charter, and the justice authorities would refuse to register any such changes." *Id*. At a minimum, these facts must have caused Defendant to harbor "serious doubts" as to the accuracy of its reporting. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) ("Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice."). Defendant did not include in the Story the laws that Plaintiff explained govern its assets despite

assuring the Fund, "We have made sure that your statements are reflected in our text."  Compl. ¶¶ 89-95.  Instead, Defendant reported the opposite of what it knew to be true: that under Kazakhstani law, Mr. Nazarbayev has "ultimate control" over the Fund's assets.  Compl. ¶ 92 (quoting Story).

The Complaint likewise pleads sufficient facts to allege that Defendant knew or was reckless in not knowing that it was false to claim that the Fund hid Nazarbayev's assets through secretive foreign corporate structures.  The Complaint alleges "Defendant in fact learned about Plaintiff's transactions through non-secret public filings," *id.* ¶ 87, and cites a specific transaction that Defendant reported from those filings, *id.* ¶ 88.  Defendant concedes in its Motion that it is common, and not "inherently disdainful" for corporations not to publicly disclose their financial statements, Mot. at 20 n.6, yet Defendant knowingly published statements claiming that Mr. Nazarbayev "hid" assets in foundations, including the Fund, that "answer only to him," Compl. ¶ 75, and said those "assets are hidden behind secretive foreign commercial structures," *id.* ¶ 78(e).

Furthermore, Defendant knew it was false to report that the Fund "did not respond to reporters' questions about what would prevent Nazarbayev from moving assets out of the foundation for his own benefit, if he chose to do so." *See* Mot., Ex. A at 10.  As alleged in the Complaint, "Defendant knew this was false; Mr. Sarinzhipov explained to Ms. Patrucic in multiple emails prior to the Story's publication that Kazakhstani law and the Charter prevented Mr. Nazarbayev from moving assets out of the Nazarbayev Fund for his own benefit."  Compl. ¶ 86.

In addition to these specific allegations demonstrating that Defendant knew, or was reckless in not knowing, that its Defamatory Statements in the Story were false, Defendant's questions to the Fund reveal its predetermined narrative, which is a basis for finding actual malice. *See Palin v. New York Times Co.*, 940 F.3d 804, 815 (2d Cir. 2019); *Harris v. City of Seattle*, 152 F. App'x 565, 568 (9th Cir. 2005) ("'[E]vidence that a defendant conceived a story line in advance

26

of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice, and may often prove to be quite powerful evidence.'" (citation omitted)).   For example, Defendant's reporter asked the Fund, "Why does the Nazarbayev Foundation belong to Nursultan Nazarbayev personally rather than to Nazarbayev University or Nazarbayev Intellectual Schools?" Compl. ¶ 45(i).   Prior to publication, Plaintiff thoroughly explained that Mr. Nazarbayev does not own or control Plaintiff, *id.* ¶¶ 46, 48, 52, 56–58.   Still, Defendant published the Story with its preconceived narrative, ignoring the facts that the Fund provided to Defendant's reporter.   Further evidence of a preconceived narrative can be found in the pre-publication correspondence, during which Defendant repeated questions for which it had already received answers when the answer did not fit its false narrative.  Compl. ¶¶ 56–60.

Defendant's conduct in its newsgathering process further shows that Defendant published the Story with reckless disregard of the truth.  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989).  Prior to publication of the Story, Plaintiff made itself available to discuss its answers to Defendant's questions, provide additional context, and answer subsequent questions, all of which it did promptly when given the opportunity.  Compl. ¶ 46, 48, 52, 53, 56–58, 61–64, 67.  And the Fund offered to make multiple high-level representatives available for an interview. *Id.* ¶ 53. Defendant then manufactured an artificial deadline "despite providing no basis for contending that the Story was hot or breaking news." *Id.* ¶ 61.  In response to Defendant's hair-trigger deadline, Plaintiff continued to act in good faith and offered to arrange a call or a Zoom. *Id.* ¶ 62.  Unreasonably, Defendant's reporter responded at 6:42 a.m. EST to Plaintiff's New York-based counsel saying Defendant would hold off publication if counsel responded by 8:00 a.m. EST. *Id.* ¶ 64.  Shortly after 8:00 am, Defendant published the Story. *Id.* ¶¶ 66–67.[8]  These facts pled in

---

[8] After publication, Plaintiff tried to resolve the issue, but Defendant refused.  Compl. ¶¶ 67–68.

the Complaint at a minimum plausibly allege that Defendant published the Story knowing that the Fund was engaging with Defendant's reporter and providing information that contradicted its predetermined narrative. This is sufficient to allege actual malice. *See Dunn v. Air Line Pilots Ass'n,* 193 F.3d 1185, 1207–08 (11th Cir. 1999) ("When there is no pressing need for immediate publication . . . actual malice may be inferred if the investigation given to the allegation is grossly inadequate under the circumstances.") (internal citations omitted); *Harte-Hanks Commc'ns,* 491 U.S. at 692 ("purposeful avoidance of the truth" sufficient to show actual malice).

Defendant rests much of its argument concerning actual malice on its contention that the "inviolability law" nullifies all legal constraints on the Fund. First, as discussed above, a law protecting Mr. Nazarbayev from prosecution for actions taken while he was in office does not mean that the Fund was unconstrained by the laws safeguarding its assets. *See supra* Section I.A.1. Second, as discussed above, it is inappropriate on a motion to dismiss to resolve questions of fact, which includes issues of foreign law and their application. *See id.*; *S.E.C. v. Jackson*, 908 F. Supp. 2d 834, 859 n.15 (S.D. Tex. 2012) (concluding that "contents of [foreign] law are relevant as facts"). Third, there is no evidence before the Court that Defendant actually believed when it published the Story that the inviolability law rendered its defamatory statements about the Fund true—it is a theory that emerged only in legal briefing by Defendant's lawyers.

When asked what prevents Mr. Nazarbayev from diverting the Fund's assets for his use, the Fund directed Defendant to laws protecting its assets for educational purposes and *Defendant never even mentioned the "inviolability law."* Compl. ¶¶ 52, 68. If Defendant truly believed that the "inviolability law" rendered "toothless and meaningless" the legal safeguards the Fund cited, why did Defendant not say so in its follow-up questions? The Fund has met its burden by alleging that Defendant knew facts that must have caused it serious doubts about the accuracy of its

28

reporting and then purposefully avoided the truth by not raising with the Fund the "inviolability law." *Harte-Hanks Commc'ns*, 491 U.S. at 692; *see also Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1139 (9th Cir. 2003) (defendant's failure to address deficiency with testing procedure could lead jury to conclude that defendant was aware of falsity of report).

Defendant argues it is "plainly incorrect and frivolous" for the Fund to claim that by not raising the "inviolability law," "Defendant purposefully avoided the truth in reckless disregard of the falsity of its Story." Mot. at 26 (quoting Compl. ¶¶ 94–95). Defendant misreads the law: its purposeful avoidance of the truth *is* evidence of actual malice. The Supreme Court has held that a reporter's "failure to interview" a key witness can be "evidence of an intent to avoid the truth" that is "unmistakably sufficient to support a finding of actual malice." *Harte-Hanks*, 491 U.S. 657 at 693–94. While failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category." *Id.* at 693 (citation omitted); *see Suzuki*, 330 F.3d at 1136 (at trial, "[t]he central inquiry is whether the evidence discloses that a defendant purposefully avoided the truth."). Defendant relies on *Friedman v. Bloomberg L.P.,* 884 F.3d 83 (2d Cir. 2017) for the proposition it was not obligated to verify reporting. Mot. at 26. *Friedman* is irrelevant because it concerns New York's "fair report" privilege under N.Y. Civ. Rights Law § 74 for reporting on a public legal filing. *See Friedman,* 884 F.3d at 93.

### D.   The Fund Has Alleged Defamation *Per Se* and Defamation Per *Quod*.

Plaintiff has pled both defamation *per se* and, in the alternative, defamation *per quod.* Either is sufficient for this claim to survive a motion to dismiss.

### 1.   The Fund Has Alleged Defamation *Per Se*.

For the same reasons that Plaintiff has adequately alleged statements of a defamatory character, *see supra* Section I.B, Plaintiff has alleged defamation *per se.* "'In the case of words or conduct actionable per se, their injurious character is a self-evident fact of common knowledge of

29

which the court takes judicial notice and need not be pleaded or proved.'" *Samuels v. Tschechtelin*, 763 A.2d 209, 244 (Md. 2000) (quoting *M & S Furniture Sales Co. v. Edward J. DeBartolo Corp.*, 241 A.2d 126, 128 (Md. 1968)).  Maryland law considers statements defamatory *per se* if they relate to "a person in his office, trade, profession, business or means of getting a livelihood, . . . or which charge him with fraud." *Shapiro v. Massengill*, 661 A.2d 202, 218 (Md. Ct. Spec. Ap. 1995) (citation omitted).  Defendant only argues that the Story is not defamation *per se* by mischaracterizing Plaintiff's claim.  *See* Mot. at 28 ("Stating that an entity is controlled by a human or that it does not disclose reports is nowhere near the type of self-evident defamation inherent in assertions of crime or immoral activity.").  But the Complaint is not based on a false claim that the Fund is merely controlled by a "human"; instead, it is, as Defendant recognized, based on the claim that "Mr. Nazarbayev has ultimate authority to control the Fund for his own benefit—if he wants," Mot. at 15, when the Fund is in truth a charitable institution for financing Kazakhstani educational institutions and is governed by statutory safeguards preventing the misconduct Defendant falsely reported is permitted, Compl. ¶¶ 8, 19.

The injurious nature of a claim that a charitable foundation can be used for personal purposes by an ex-dictator is self-evident.  Defendant admits that "a reader might reasonably *draw the inference* of corruption or fraud." Mot. at 17.  That inference is the defamatory meaning of the words Defendant published.  "A statement which disparages the business reputation of a plaintiff is one of the categories traditionally considered to be defamation *per se*." *S. Volkswagen, Inc. v. Centrix Fin., LLC,* 357 F. Supp. 2d 837, 843 (D. Md. 2005) (citations omitted).  The accusation of fraud is defamation *per se*.  *See, e.g.*, *Shapiro*, 661 A.2d at 219 (accusation of fraud by government contractor was defamation *per se*); *S. Volkswagen, Inc.*, 357 F. Supp. 2d at 843 (calling automobile dealership a "fraud" was defamation *per se*).  Just as accusing a public official of corruption is

30

defamation *per se*, so too is accusing the Fund of being used for Mr. Nazarbayev's personal benefit. *See Spirtos v. Yemenidjian*, 499 P.3d 611, 619 (Nev. 2021); *Bentley v. Bunton*, 94 S.W.3d 561, 582 (Tex. 2002) (citing W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 112, at 791–792 (5th ed. 1984)).  Defendant concedes the Story leads to reasonable inferences of fraud and corruption—precisely the sort of statements that are defamation *per se*.

### 2.   The Fund Has Alleged Defamation *Per Quod*.

Alternatively, Plaintiff has pled defamation *per quod* by alleging how the Story harmed the Fund.  Defendant argues that Plaintiff has not pled why "a statement that a corporate entity is controlled by an individual and does not disclose annual reports is 'scornful'" and that Plaintiff has failed to allege special damages it suffered.  Mot. at 28.  As explained above, this argument mischaracterizes Plaintiff's claim and the Story.  *See supra* Sections I.B.1 and I.B.4.  Plaintiff has alleged the "extrinsic facts" required to "establish the defamatory character of the words or conduct."  *Indep. Newspaper*, 966 A.2d at 448.  Plaintiff is a non-profit educational endowment, Compl. ¶ 19, yet Defendant stated that the Fund is part of a "network of foundations that answer only to [Mr. Nazarbayev]," in which he "hid" assets, *id.* ¶ 75, and claims he controls the Fund for his benefit, *id.* ¶¶ 1, 86.  The Fund pled that the article was a "blow to Plaintiff's reputation in the international investment and charitable community" and that its "ability to secure opportunities and raise funds will be and has been sharply limited" by the Story.  *Id.* ¶¶ 96–97.  The Fund pled the Story "harm[ed] its relationship with key personnel," which "cost [it] substantial resources and deprived [it] of human capital."  *Id.* ¶ 98.  Finally, the Fund pled the Story "created problems for [it] with its existing counterparties, including banks and asset managers, causing Plaintiff to incur substantial fees."  *Id.* ¶ 99.  These allegations are sufficient on a motion to dismiss to establish the

defamatory character of the article and show that it caused actual damage to the Fund.[9]

## II.    Maryland's Anti-SLAPP Statute Does Not Apply to This Action.

Defendant has not met its high burden under Maryland's anti-SLAPP law.  To prevail, it must show Plaintiff's defamation action was (1) "[b]rought in *bad faith* against a party" who exercised rights to freedom of speech regarding "any issue of *public concern*"; (2) materially related to the defendant's communication; and (3) *intended* to inhibit or inhibits the exercise of freedom of speech.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-807 (b) (emphasis added).  Defendant fails to meet each statutory requirement, any one of which is fatal.  The statute is reserved for egregious attempts to freeze protected speech.  This matter, brought by an endowment accused of being an instrument of corruption, is not the rare instance the statute contemplates.

### A.    The Fund Did Not File The Suit in Bad Faith

The Fund did not file the suit in bad faith given that it has sufficiently pled defamation, the timing of the suit was reasonable, and it seeks appropriate damages.

Defendant repeatedly relies upon the application of an inapposite Maryland case where an anti-SLAPP motion to dismiss was granted: *MCB Woodberry Dev., LLC v. Council of Owners of Millrace Condo., Inc.*, 265 A.3d 1140 (Md. Ct. Spec. App. 2021).  In *MCB Woodberry*, a developer brought an action against opponents of its development plans.  *Id.* at 1144–45.  The developer sought $25 million punitive damages that would have been ruinous to the defendant homeowners' association, *id.* at 1158, but Plaintiff here has not sought a ruinous punitive award designed to

---

[9] To the extent that the Court finds Plaintiff has not adequately alleged damages to support a defamation *per quod* claim, Plaintiff requests leave to file an amended complaint remedying any such defects.  *See Sibley v. CarMax, Inc.*, 2020 WL 4050294, at *4 (Md. Ct. Spec. App. July 20, 2020) (trial court allowed leave to amend "specifically to articulate the exact damages that he believes constitute special damages in this case"); *James v. Pratt & Whitney*, 126 F. App'x 607, 613 (4th Cir. 2005) (district court should have allowed amendment to re-plead special damages).

bankrupt Defendant—Plaintiff did not specify any amount of punitive damages in its Complaint. Compl. at 30 (Prayer for Relief). The developer in *MCB Woodberry* brought the action shortly after the homeowners' association filed another legal proceeding to protect its rights regarding the public issues raised by the development plans. *Id.* at 1147–48. Nothing similar has happened here. Lastly, the developer in *MCB Woodberry* immediately served intrusive discovery requests on defendants, including seeking personal bank records. *Id.* at 1149. But the Fund has not served Defendant with any discovery requests; nor is there any reason to assume its bad faith in discovery. However, even applying the factors set out in *MCB Woodberry*—plausibility of the claim, damages sought, and timing of the suit, *id.* at 1157–59—Defendant comes up short.

### 1.   The Fund Plausibly Alleges Defamation.

The Defamatory Statements in the Story are false, defamatory, and published with legal fault. As explained above, Plaintiff has adequately pled a defamation claim. *See supra* Section I.

### 2.   The Fund Seeks Appropriate Damages.

Defendant fails to show that the Fund is seeking excess damages. The sole Maryland case on which Defendant relies for its argument that the damages sought here are evidence of bad faith, Mot. at 32–33, is *Harris v. Fix*, a Baltimore County trial court's oral resolution of an anti-SLAPP motion. No. 24-C-21-2000 (Md. Cir. Ct. Balt. City Mar. 30, 2022). Defendant relies on it for the proposition that an "unsupported claim for punitive damages" is evidence of bad faith. *See* Mot., Ex. G. But the "extraordinary relief" sought there included a prospective restraint on public and private speech and a mental health examination—which the court found "particularly offensive." *Id.* at 38–39. None of those factors are present here. In granting the anti-SLAPP motion, the Court stressed the complaint's deficiencies, the failure to explain delays in advancing the litigation, and "the extraordinary relief" sought. *Id* at 38-39. *Harris* only stands for the proposition that plaintiffs cannot use defamation suits in extreme ways to harass a defendant. There are no such extreme

tactics and unreasonable demands here.[10]

### 3.    The Timing of the Suit Is Proper.

There was nothing untoward about the Fund filing this suit six months after the Story was published.  "Timing is particularly relevant [] in the context of an alleged SLAPP suit because the purpose of the litigation is to *deter and intimidate* defendants from continuing their public opposition to the plaintiff's aims." *MCB Woodberry Dev.*, 265 A.3d at 1158 (emphasis added).  In *MCB Woodberry*, the developer sued for defamation almost immediately following the association action disrupting its plans.  Here, the Fund waited to file its suit for nearly six months after the Story was published in the hopes that the harm from the Story would subside and litigation could be avoided.  While Defendant falsely says the Fund "did not request a retraction or correction," the Fund's request for a retraction or correction the day the Story was published is quoted in the Complaint.  Compl. ¶ 67 ("Given the errors in your reporting, we request that you run a correction immediately, or else retract those portions of the story pertaining to [the Fund].")  Defendant refused.  Compl. ¶ 68.  As a result, the timing of the Complaint cannot be read as an attempt to *deter and intimidate* Defendant—indeed, not suing immediately suggests the opposite.  With respect to the summons, which Defendant also attacks, Plaintiff received a waiver of service within the timeline set by federal law.  There was no bad faith in the filing or prosecution of this action.

---

[10] The out-of-state cases Defendant cites likewise do not help its argument.  In *Goral v. Kulys*, the court did not grant an anti-SLAPP motion based *merely* on an unspecified punitive damages request.  21 N.E.3d 64, 80–81 (Ill. App. 1 Dist. 2014).  It considered damages in excess of $1 million together with unspecified punitive damages, as well as the fact that the politician plaintiff did not seek damages for nonpolitical losses (suggesting suit was political).  *Id.*  In *Chicago Reg'l Council of Carpenters v. Jursich*, the court denied the anti-SLAPP motion and distinguished seeking *unspecified* compensatory and exemplary damages (which was permissible, and similar to this case) from parties seeking "millions in damages."  986 N.E.2d 197, 203–204 (Ill. App. 1 Dist. 2013).  Lastly, while Defendant asserts that SLAPP plaintiffs "typically ask for damages which would be ruinous," Mot. at 33 (citing *Wilcox v. Superior Court*, 33 Cal. Rptr. 2d 446, 449-50 (Ct. App. 1994)), the Fund has not done so.

### B.     Defendant Does Not Show This Matter Is One of Public Concern.

Defendant simply presupposes that the Story is of public concern.  However, Defendant cannot rely on its own unfounded, defamatory statements to show the Story is of public concern. When the statements from the Story are removed, the business of an endowment fund in Kazakhstan without a public presence is not of public concern in the United States.

### C.     Defendant Fails to Show the Fund Subjectively Intended to Inhibit the Exercise of Protected Speech.

Defendant has failed to show Plaintiff subjectively intended to inhibit Defendant's exercise of protected speech.  "Bare allegations" are not sufficient to support dismissal under Maryland's anti-SLAPP statute.  *Knox v. Mayor & City Council Baltimore City*, 2017 WL 5903709, at *11 (D. Md. Nov. 30, 2017).   Defendant's Motion offers nothing more than a bare allegation.  *See* Mot. at 34 ("This lawsuit is intended to inhibit that communication by making the speech not 'free.'"). Plaintiff's defamation claim is well pleaded (and thus Defendant's speech is not protected). Plaintiff has pled defamation *per se*, which does not require special damages, and regardless, the relief requested is commensurate with Plaintiff's damages. Defendant fails to cite any authority supporting its claim that Plaintiff's resources are relevant to its subjective intent.  Defendant has not met the criteria for granting an anti-SLAPP motion.

### CONCLUSION

For the foregoing reasons, the Motion to Dismiss for Failure to State a Claim by Defendant Journalism Development Network, Inc., should be denied in its entirety.  The Fund has adequately alleged a defamation claim, and Defendant's arguments to the contrary each fail.  Defendant has also failed to satisfy the criteria for granting an anti-SLAPP motion.

Dated:  Armonk, New York
        November 29, 2022

By:      /s/ Joseph F. Kroetsch
        BOIES SCHILLER FLEXNER LLP

        Michael Mitchell (Bar No. 30352)
        1401 New York Ave, NW
        Washington, DC 20005
        Tel.: (202) 237-2727
        Fax: (202) 237-6131
        mmitchell@bsfllp.com

        Matthew L. Schwartz (*pro hac vice*)
        55 Hudson Yards
        New York, New York 10001
        Tel.: (212) 446-2300
        Fax: (212) 446-2350
        mlschwartz@bsfllp.com

        Joseph F. Kroetsch (*pro hac vice*)
        333 Main Street
        Armonk, New York 10504
        Tel.: (914) 749-8200
        Fax: (914) 749-8300
        jkroetsch@bsfllp.com